**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DOMINIQUE TIMMONS individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RECKITT BENCKISER LLC AND RB HEALTH (US) LLC,<br><br>Defendants. | Case No. 1:25-cv-12192<br><br>Honorable Andrea R. Wood |

**DEFENDANTS' MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. FACTS ..... 3

A. The Neuriva Product Line and Key Ingredients ..... 3

B. The Prior Neuriva Litigation and Labeling Changes ..... 3

C. Plaintiff Dominique Timmons's Individual Allegations ..... 4

D. The Doma Study and the Bazinet Report ..... 5

E. The Proposed Multi-State and Illinois-Only Classes ..... 5

III. STANDARD ..... 5

IV. ARGUMENT ..... 6

A. Plaintiff's challenges to structure/function claims are preempted. ..... 6

*1. Regulatory Regime* ..... 7

*2. The Brain Health Claims Are Classic Structure/Function Claims* ..... 8

*3. Plaintiff's State Law Claim Demands More Than Federal Law Requires* ..... 8

B. Plaintiff fails to allege actual falsity or lack of substantiation under ICFA ..... 10

C. Plaintiff lacks standing to assert claims for products she did not purchase. ..... 13

D. ICFA does not apply extraterritorially to the proposed multi-state class ..... 14

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ....................14

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ....................12

*Bubak v. Golo, LLC*,
No. 24-492, 2025 WL 2860044 (9th Cir. Oct. 9, 2025) ....................6

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (1996) ....................5

*Dachauer v. NBTY, Inc.*,
913 F.3d 844 (9th Cir. 2019) ....................7, 8, 9

*Daly v. Glanbia Performance Nutrition, Inc.*,
No. 23 C 933, 2023 WL 5647232 (N.D. Ill. 2023)....................14

*Dapeer v. Neutrogena Corp.*,
95 F. Supp. 3d 1366 (S.D. Fla. 2015) ....................14

*Dervin v. NBTY, Inc.*,
607 F.Supp.3d 831 (N.D. Ill. 2022) ....................5

*Ferrari v. Vitamin Shoppe, Inc.*,
No. 17-10475-GAO, 2022 WL 974048 (D. Mass. Mar. 31, 2022) ....................9

*Ferrari v. Vitamin Shoppe, Inc.*,
70 F.4th 64, 68 (1st Cir. 2023)....................6

*Gallagher v. Bayer AG*,
No. 14-cv-04601-WHO, 2015 WL 1056480 (N.D. Cal. Mar. 10, 2015) ....................8

*Gredell v. Eyth Laboratories, Inc.*,
367 Ill. App. 3d 287 (2006) ....................11

*Greenberg v. Target Corp.*,
985 F.3d 650 (9th Cir. 2021) ....................6, 8

*Greifenstein v. Estee Lauder Corp.*,
No. 12-cv-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2013) ....................11

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Gubala v. CVS Pharmacy, Inc.*,
No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016) ....................7

*Guerrero v. Target Corp.*,
889 F. Supp. 2d 1348 (S.D. Fla. 2012) ....................14

*Heim v. Comcast Cable Commc'ns, LLC*,
No. 18-cv-07962, 2020 WL 9211284 (N.D. Ill. Dec. 8, 2020) (Wood, J.)....................6

*Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*,
910 F.3d 1186 (11th Cir. 2018) ....................9

*Holmes v. Marion Cnty. Sheriff's Off.*,
141 F.4th 818 (7th Cir. 2025) ....................6

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. Oct. 9, 2020)....................10

*Kubilius v. Barilla Am., Inc.*,
No. 18 C 6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) ....................15

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................13

*Menominee Indian Tribe of Wis. v. Thompson*,
161 F.3d 449 (7th Cir. 1998) ....................3

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*,
48 F.4th 1040 (9th Cir. 2022) ....................6

*Nichols v. Naturmed, Inc.*,
No. 16 C 7356, 2017 WL 1333146 (N.D. Ill. Apr. 11, 2017)....................10

*Phillips v. DePaul Univ.*,
19 N.E.3d 1019 (Ill. Ct. App. 2014) ....................10, 11

*PhotoMedex, Inc. v. Irwin*,
601 F.3d 919 (9th Cir. 2010) ....................6

*Spector v. Mondelēz Int'l Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................10

*Tarzian v. Kraft Heinz Foods Co.*,
No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019) ....................15

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Toback v. GNC Holdings, Inc.*,
No. 13-80526, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) ....................14

*Willard v. Tropicana Mfg. Co.*,
577 F. Supp. 3d 814 (N.D. Ill. 2021) ....................13

*Williams v. Reckitt Benckiser LLC and RB Health (US) LLC*,
No. 1:20-cv-23564, ECF 116-2 (S.D. Fla.)....................4, 12

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

**STATUTES**

21 U.S.C. § 343-1 ........ *passim*

21 U.S.C. § 343(r) ........ *passim*

Ill. Comp. Stat. ch. 815, § 505/1 et seq. ........ 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. III ........ 6, 13

**REGULATIONS**

21 C.F.R. § 101.93(f) ........ 8

65 Fed. Reg. at 1029, 1030 ........ 8

**RULES**

Fed. R. Civ. P. 9(b) ........ 5

Fed. R. Civ. P. 12(b)(6) ........ 5, 15

**NON-PERIODICAL PUBLICATIONS**

Cotter et al., *Nutr Neurosci* (2022) ........ 13

Kato-Kataoka et al., *J Clin Biochem Nutr* (2010) ........ 12

Lee et al., *Prog Neuropsychopharmacol Biol Psychiatry* (2010) ........ 12

Reed et al., *J Cognit Enhanc* (2018) ........ 12

Reyes-Izquierdo et al., *Br J Nutr* (2013) ........ 13

Richter et al., *Clin Interv Aging* (2013). ........ 12

Robinson et al., *Aging Neuropsychol Cogn* (2020) ........ 13

Robinson et al., *Antioxidants* (2021) ........ 13

Yong et al., *Chongqing Med* (2011) ........ 12

## TABLE OF AUTHORITIES (continued)

**Page(s)**

**OTHER AUTHORITIES**

FDA, *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* Part I.A-B. (Jan. 2009) https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidanceindustry-substantiation-dietary-supplement-claims-made-under-section-403r-6-federal-food (last visited Aug. 23, 2026) ......................... 9

Defendants Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "Reckitt") respectfully move the Court to dismiss Plaintiff's First Amended Complaint (ECF 38, "FAC"). Pursuant to this Court's individual rules, Defendants respectfully request oral argument on this motion.

## I. Introduction

This is the latest in a long-running series of class actions asserting virtually identical allegations against Reckitt for allegedly deceptive brain health structure function claims involving Reckitt's dietary supplement Neuriva. In this most recent salvo, Plaintiff Dominique Timmons cavalierly dismisses label and other marketing changes *already* found meaningful in prior federal litigation. She brings a putative class action under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"), alleging that Reckitt[1] made false or misleading representations about the brain-health benefits of its Neuriva line of dietary supplements. Plaintiff's FAC should be dismissed in its entirety for multiple, independent reasons.

***First***, as explained further below, plaintiff seeks to re-litigate extensive briefing, expert reports, and a thorough court decision from the Southern District of Florida approving Neuriva's current product label and marketing. The Florida federal court's approval of the class settlement there endorsed precisely the type of label—"clinically tested"—that Plaintiff now challenges. Notably, that consolidated case included actions brought by non-Florida class representatives.

***Second,*** to the extent Plaintiff challenges structure/function claims made in accordance with the Dietary Supplement Health and Education Act of 1994 ("DSHEA") framework and the Nutrition Labeling and Education Act ("NLEA"), her claim is preempted by federal law.

***Third,*** Plaintiff fails to plausibly allege that any specific representation on Neuriva's labeling or marketing is false or that the clinical evidence supporting Neuriva's claims is insufficient. Plaintiff relies on one report authored by one scientist who criticized the methodology

[1] The entities named as Defendants in this lawsuit underwent a recent restructuring. In that restructuring, RB Health (US) LLC merged with a different entity, Exponential Health, into Reckitt Benckiser LLC. *See* ECF No. 40 at 1. Because of this merger, RB Health (US) LLC no longer exists. For the sake of this motion, Reckitt responds on behalf of both Defendants.

and statistical analyses outlined in a single study authored by Dr. Katarina Doma and seven others (the "Doma" study). But an attack on proof is not proof of the contrary. Plaintiff's complaint repeatedly collapses two fundamentally different propositions: first, that the Doma study does not provide rigorous evidence to establish efficacy; and second, that the study *affirmatively proves* Neuriva provides no cognitive benefit. This Court should not credit Plaintiff's sleight of hand.

The report of Richard Bazinet (the "Bazinet Report"), which Plaintiff attaches to her complaint, goes to the Doma study's design, statistical methodology, and the strength of its inferences. Bazinet's criticisms do not—and cannot—establish that Reckitt lacks substantiation for any brain health claims associated with Neuriva. Nor does it establish the opposite proposition that Neuriva provides no benefit. Just as a single allegedly flawed mileage test does not establish a car is a gas guzzler, neither Bazinet nor Plaintiff offers evidence that Neuriva is not effective. And the FAC completely ignores the Doma study's references to the mountain of other, ingredient-level substantiation for Neuriva's two main ingredients, including the supporting declaration of Dr. Gary Small filed in the Florida federal litigation, the history of which this Court is familiar with from prior briefings. Moreover, Plaintiff offers no affirmative clinical testing of her own. In simple terms, the FAC is a misplaced and misleading attack on a single, legitimate scientific study.

***Fourth,*** Plaintiff lacks standing to assert claims on behalf of purchasers of Neuriva products she never bought—namely, Neuriva Original, Neuriva Original Gummies, Neuriva Plus Gummies, and Neuriva Ultra.

***Finally***, ICFA, as a matter of black-letter law, does not apply extraterritorially to the multi-state class Plaintiff proposes. The proposed class includes purchasers in California, Florida, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington, none of whom are alleged to reside in Illinois, purchased Neuriva in Illinois, or had any transactional contact with Defendants in Illinois. Under controlling Illinois Supreme Court and Seventh Circuit authority, ICFA provides no cause of action for these out-of-state transactions.

For the foregoing reasons and as explained further below, this Court should dismiss Plaintiff's FAC in its entirety. Moreover, because amendment would be futile, this Court's

dismissal should be with prejudice.

## II. Facts[2]

### A. The Neuriva Product Line and Key Ingredients

Neuriva is a line of brain-health dietary supplements manufactured and sold by Defendants. FAC ¶ 1. The product line includes, among other supplements, Neuriva Original (in capsule or gummy form), Neuriva Plus (in capsule or gummy form), and Neuriva Ultra. *Id.* ¶¶ 1, 97. All products in the Neuriva line contain two primary active ingredients: (1) phosphatidylserine ("PS") and (2) coffee cherry extract ("CCE"), also referred to as coffee fruit extract. *Id.* ¶ 2. Neuriva Plus additionally contains B-vitamins. *Id.* ¶ 90. Neuriva Ultra contains additional ingredients beyond PS and CCE, including B-vitamins and alpina galagna ("AG"). *Id.* ¶¶ 90, 92.

PS is a phospholipid component naturally present in the human brain and is found in various food sources. FAC Ex. B, ECF 38-2 at 2; *see also* FAC ¶ 37. As shown below, clinical trials have examined its effects on cognitive function, memory, and mental performance. *See, e.g.*, FAC Ex. C, ECF 38-3 & FAC Ex. B. CCE is derived from the fruit of the coffee plant and is rich in a compound studied for cognitive improvement. *See* FAC Ex. B at 2.[3] The FAC challenges representations on Neuriva product labeling and marketing materials stating that Neuriva supports various aspects of brain health, including memory, focus, concentration, learning, and accuracy. *E.g.* FAC ¶¶ 3, 5, 83.

### B. The Prior Neuriva Litigation and Labeling Changes

Beginning in 2020, multiple putative class actions, including in Florida, California, and New York, were filed challenging Neuriva's use of the phrase "clinically proven" on product labels and marketing materials. That litigation ultimately resulted in a proposed class settlement in the U.S. District Court for the Southern District of Florida. As part of the negotiated relief, Reckitt

[2] Reckitt does not concede or admit any of the facts included herein but accepts the FAC's allegations as true solely for purposes of this Motion to Dismiss.

[3] The Court may properly consider the exhibits filed in support of Plaintiff's FAC when ruling on Defendants' motion to dismiss. *See Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." (cleaned up)).

agreed to discontinue the phrase "clinically proven" and replace it with the materially narrower phrase "clinically tested." The settlement proceedings generated extensive evidence concerning the significance of that change, including consumer-perception research, expert testimony, and marketing evidence. The settlement record also included scientific evidence supporting Neuriva's claims, including a declaration from Gary W. Small, a UCLA physician and neuroscientist. *See Williams v. Reckitt Benckiser LLC and RB Health (US) LLC*, No. 1:20-cv-23564, ECF 116-2 ("Small Decl."). The district court, in approving the settlement in *Williams*, relied on Dr. Small's declaration, evidence concerning the distinction between clinically "proven" and "tested," and evidence showing that the removal of "clinically proven" had real value because it eliminated a stronger efficacy message. *See Williams,* ECF 133 ("Report & Recommendation"), 140 (district court order adopting the Report & Recommendation). Although the order approving the settlement was reversed on jurisdictional grounds, Neuriva nonetheless implemented the changes specified in the settlement agreement. *Williams*, ECF 169-1 ("Second Amended Settlement Agreement") at Exhibit B, Section II(T) ("Reckitt changed the labeling and advertising of the Neuriva Products to remove the Challenged Representations. These changes went into effect in early 2022 and have been in effect in the market for at least two (2) years.")

This history is relevant because Plaintiff's FAC expressly challenges current representations that Neuriva's ingredients have been "clinically tested," characterizing the prior change from "clinically proven" as "non-substantive." FAC ¶ 5. Not so. The prior litigation record shows that argument has no merit.

### C. Plaintiff Dominique Timmons's Individual Allegations

Plaintiff Dominique Timmons is a resident of Chicago, Illinois. *Id.* ¶¶ 85, 105. She alleges that she purchased one package of Neuriva Plus at a Walgreens store near her residence in approximately July 2023 for approximately $34.99. *Id.* ¶ 85. She alleges that she took the product as instructed, experienced no cognitive benefit, and stopped taking it. *Id.* Her sole claim is brought under ICFA. *Id.* ¶¶ 107–117.

### D. The Doma Study and the Bazinet Report

The FAC attaches the Bazinet Report, which critiques the Doma Study. FAC Ex. A, ECF 83-1 & FAC Ex. C. The Doma Study is a randomized, double-blind, placebo-controlled clinical trial that examined the cognitive effects of a Neuriva product containing both PS and CCE. FAC Ex. C at 1.

The Bazinet Report offers myriad methodological criticisms of the Doma Study. *See generally* FAC Ex. A. It fails entirely to address separate *ingredient-level* studies examining the individual efficacy of PS and CCE. Notably, the Bazinet Report focuses on the "conduct and reporting of [the Doma study]" and its alleged "many material problems," rather than the Doma study's ultimate conclusions. *Id.* at 3. It then implausibly states that this methodological criticism of a single study demonstrates that Neuriva's five memory-related claims are without substantiation. *Id.*

### E. The Proposed Multi-State and Illinois-Only Classes

Plaintiff seeks to represent two alternative classes: (1) a multi-state class of all people who purchased Neuriva products in 10 states during the applicable limitations period; or alternatively (2) a class of all people who purchased Neuriva products only in Illinois during the same time. FAC ¶ 97.

## III. Standard

Under Rule 9(b), a party alleging fraud must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how" of the alleged deception. Fed. R. Civ. P. 9(b). Because ICFA claims sound in fraud, they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500–01 (1996)); *Dervin v. NBTY, Inc.*, 607 F.Supp.3d 831, 836 (N.D. Ill. 2022) (citing *Connick* and applying Rule 9(b) to ICFA claims).

On a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. … Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." *Heim v. Comcast Cable Commc'ns, LLC*, No. 18-cv-07962, 2020 WL 9211284, at * 2 (N.D. Ill. Dec. 8, 2020) (Wood, J.) (cleaned up).

## IV. Argument

The FAC should be dismissed for multiple reasons. Plaintiff's sole claim is preempted by federal law; it fails to sufficiently allege that the brain health claims are false or lack substantiation; and Plaintiff lacks Article III standing to sue on behalf of out-of-state purchasers or for purchasers involving products other than the one she purportedly purchased.

### A. Plaintiff's challenges to structure/function claims are preempted.

Plaintiff's ICFA claim should be dismissed because her challenge to structure/function claims are preempted under the NLEA. A court may dismiss a case for failure to state a claim "if the affirmative defense is clear from the face of the complaint." *Holmes v. Marion Cnty. Sheriff's Off.*, 141 F.4th 818, 822 (7th Cir. 2025). "The face of the complaint refers not just to its four corners but includes sources courts ordinarily consider when deciding a Rule 12(b)(6) motion, such as documents incorporated into the complaint by reference." *Id.*

The First and Ninth Circuits have ruled an alleged violation of the FDCA—which expressly forbids private actions, 21 U.S.C. § 337(a)–(b)—cannot give rise to a state law claim predicated on the same conduct. *See Bubak v. Golo, LLC*, No. 24-492, 2025 WL 2860044, at *1 (9th Cir. Oct. 9, 2025) (affirming dismissal of state law claim because it "necessarily requires litigating 'the alleged FDCA violation'" and therefore was implicitly preempted by the same); *Ferrari v. Vitamin Shoppe Indus. LLC*, 70 F.4th 64, 68 (1st Cir. 2023) ("If the manufacturer's label satisfies § 343(r)(6)'s requirements, consumers may not attack the structure/function claim under state law."); *see also Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022) (plaintiff's state law claims preempted because they rest upon a violation of the FDCA, whose claims must be brought by the United States); *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. 2021) ("The FDCA preempts Greenberg's state law claims because the challenged statement is a permissible structure/function claim."); *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 930 (9th Cir. 2010) (finding private rights of action are prohibited under the FDCA) ("To permit

PhotoMedex to proceed with a claim … would, in effect, permit PhotoMedex to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make.").

In the absence of Seventh Circuit guidance, this Court should adopt other circuits' rejection of claims from a federal statute that explicitly provides no private cause of action.

*1. Regulatory Regime*

In 1990, Congress enacted the NLEA to regulate the claims made on food and supplement labels. *See* 21 U.S.C. § 343-1(a). The NLEA amended the FDCA by adding a provision that expressly preempts state laws that establish "any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title . . . ." *Id.* at 343-1(a)(5) (emphasis added). "A cause of action under Illinois law for false or misleading product labeling is preempted, therefore, whether based on an Illinois statute, regulation, or common law duty, if it seeks to impose labeling or other requirements that are not identical to" federal law. *See Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *4 (N.D. Ill. Mar. 15, 2016).

One claim "of the type described in section 343(r)(1)" and "made in the label or labeling of food" is the structure/function claim. *Dachauer v. NBTY, Inc.*, 913 F.3d 844, 847 (9th Cir. 2019). A structure/function claim "describes the role of a nutrient or dietary ingredient intended to affect the structure or function in humans," or "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function," but does not "claim to diagnose, mitigate, treat, cure, or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6). Structure/function claims are permissible on supplements if they meet three requirements: (1) the manufacturer has substantiation that the statement is truthful and not misleading; (2) the statement contains a prominent disclaimer that the Food and Drug Administration ("FDA") has not evaluated the statement and that the product "is not intended to diagnose, treat, cure, or prevent any disease"; and (3) the statement itself does not "claim to diagnose, mitigate, treat, cure, or prevent" disease. 21 U.S.C. § 343(r)(6).

Because structure/function claims fall under section 343(r)(1)'s umbrella, a state law requirement that imposes something different than federal law would be expressly preempted. 21 U.S.C. § 343-1(a)(5); *Dachauer*, 913 F.3d at 847.

*2. The Brain Health Claims Are Classic Structure/Function Claims*

Neuriva's brain-health claims—that the product supports memory, focus, concentration, learning, and accuracy (the "Brain Health Claims")—are classic structure/function claims within the meaning of 21 U.S.C. § 343(r)(6). They describe the role of dietary ingredients (PS and CCE) in affecting cognitive function (a normal structure or function of the body) without claiming to treat or prevent any disease. The Brain Health Claims are structure/function claims, as opposed to disease claims, because they use words like "fuel" and "support," and do not claim to diagnose, treat, cure, or prevent any disease—perfectly in line with FDA guidance on acceptable structure/function claims. *See* FAC ¶¶ 5, 83; *see also Greenberg v. Target Corp.*, 985 F.3d 650, 654–55 (9th Cir. 2021) ("helps support" language is permissible and in line with FDA guidance on structure/function claims).

Here, Plaintiff challenges the Neuriva products as not providing any of the represented Brain Health Claims. *E.g.* FAC ¶¶ 4, 101. Yet as Plaintiff acknowledges in the FAC, the Brain Health Claims use appropriate general words like "support" and "fuel." *E.g.* FAC ¶¶ 5, 83; *see also* 65 Fed. Reg. at 1029, 1030 (approving of "enhance" and "support" for structure/function claims). The Brain Health Claims simply explain how Neuriva can support or maintain a typical function of the body: cognition. Thus, the Brain Health Claims are permissible structure/function claims subject to NLEA preemption. 21 U.S.C. § 343(r)(6); 21 C.F.R. § 101.93(f); *Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 1056480, at *7 (N.D. Cal. Mar. 10, 2015) (dismissing various state law claims as preempted where "supports heart health" and "supports immunity" were permissible structure/function claims).

*3. Plaintiff's State Law Claim Demands More Than Federal Law Requires*

Assuming *arguendo* that Plaintiff's claim is not implicitly preempted by the FDCA, Plaintiff's state law claim demands a level of substantiation for the Brain Health Claims that is

"not identical to" federal requirements. Plaintiff's claim is therefore expressly preempted. *Dachauer*, 913 F.3d at 846–49 (rejecting plaintiff's state law claim that sought to "impose" a level of "proof" for structure/function claims that was "not identical to the requirement of section 343(r)"); *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1196 (11th Cir. 2018) (affirming dismissal of state law claims against dietary supplement manufacturer as expressly preempted because they demanded labeling requirements "not identical" to federal requirements) ("[T]o avoid preemption, Hi-Tech's state-law claim must be *identical*, not merely consistent, with federal requirements." (emphasis in original)).

Federal law requires structure/function claims have "substantiation that the claim is truthful and not misleading." 21 U.S.C. § 343(r)(6). FDA guidance advances a common-sense interpretation of "substantiation," as meaning "competent and reliable scientific evidence." *See* FDA, *Guidance for Industry: Substantiation for Dietary Supplement Claims Made Under Section 403(r)(6) of the Federal Food, Drug, and Cosmetic Act* Part I.A-B. The required level of substantiation depends on the product and claim at issue. The FDA applies a higher standard to FDA-approved health claims on food or beverages, *see* 21 U.S.C. § 343(r)(3)(B)(i) (requiring "significant scientific agreement"), and a higher "clinical consensus"-type standard to pre-approval of new drug therapies. That "significant scientific agreement" standard does not apply to structure/function claims on supplements, however.

Here, Plaintiff acknowledges that Reckitt has at least one scientific study offered in substantiation of its Brain Health Claims. *See* FAC ¶¶ 15, 18–19. Yet Plaintiff fails to recognize the wealth of *other* ingredient-only studies that support Defendants' Brain Health Claims. She demands that the Court conclude the Brain Health Claims are false by submitting *one* critique, written by *one* author, criticizing *one* of Defendants' substantiating studies in support of this position. Plaintiff's demand for scientific consensus seeks to impose on Defendants a standard that is "not identical to" the type of substantiation the FDA requires for structure/function claims. *See* 21 U.S.C. § 343-1(a)(5); *see also Ferrari v. Vitamin Shoppe, Inc.*, No. 17-10475-GAO, 2022 WL 974048, at *5 (D. Mass. Mar. 31, 2022) (defendants are not required to provide evidence of

structure/function as doing so would "hold[] the defendant to a higher standard of substantiation than is required by" federal law) ("Under the structure/function framework, Vitamin Shoppe is not required to show that its products work in the recommended dosages, nor is it required to broadly prove the efficacy of" its primary ingredient.).[4]

Because Plaintiff seeks to impose on Neuriva's structure/function claims a higher standard than what federal law requires, her state law claim relating to Defendants' Brain Health Claims is preempted. *Id.*; *Kroessler v. CVS Health Corp*., 977 F.3d 803, 813 (9th Cir. Oct. 9, 2020).

**B. Plaintiff fails to allege actual falsity or lack of substantiation under ICFA.**

Even if Plaintiff's claim were not preempted, it should be dismissed on another, independent basis: she fails to allege actual falsity or lack of substantiation under ICFA. "To succeed in a private cause of action under [ICFA], a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Spector v. Mondelēz Int'l Inc.*, 178 F. Supp. 3d 657, 664 (N.D. Ill. 2016) (cleaned up). Under ICFA, a plaintiff can "show that an advertisement is deceptive either by proving its falsity," or "a lack of substantiation." *Id.* at 666 (cleaned up). Plaintiff fails both tests.

***First,*** Plaintiff's FAC does not allege that any specific brain-health representation on Neuriva's labeling is actually false. *See, e.g. Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1028 (Ill. Ct. App. 2014) (finding plaintiffs pleaded "no facts" showing statistics they claimed were false were untrue and that "unsupported, conclusory allegations … were insufficient to support any deceptive act or practice committed" by the defendant). Instead, Plaintiff asserts only that the

---

[4] Cases holding the opposite are distinguishable. In *Nichols v. Naturmed, Inc.*, No. 16 C 7356, 2017 WL 1333146 (N.D. Ill. Apr. 11, 2017), for instance, the Court summarily held that a claim was not preempted where the plaintiff did not seek to impose labeling requirements "that differ from or add to the requirements" under federal law. Here, however, Plaintiff's FAC transparently seeks to heighten the labeling requirements applicable to the Neuriva products. *See, e.g.*, FAC ¶ 5 (criticizing "non-substantive changes to the labelling representations or on those made on [Defendants'] web site"), ¶ 90 (alleging that federal labeling requirements should be strictly tied to "clinical trials" and the opinions of unidentified "experts in the field"). In any event, the cursory analysis and conclusion in *Nichols* contravenes the substantial weight of authority nationwide.

scientific evidence supporting those claims is, in Plaintiff's view, insufficient. The FAC does not plausibly allege that Neuriva Plus does not, in fact, support brain health, memory, or focus. It does not allege that any specific consumer experienced the product as harmful or entirely ineffective in a manner that contradicts the label claims. Instead, it alleges, at most, that the Doma Study—one source of substantiation—suffers from methodological limitations. *See* ECF 38 ¶¶ 15–20.

Plaintiff's reliance on the Bazinet Report does not cure this fundamental deficiency. The Bazinet Report critiques the methodology of the Doma Study, questioning its sample size, statistical approaches, and study design. But even if every criticism in the Bazinet Report were accepted as true, it would at best establish only that the Doma Study was methodologically flawed. That distinction is critical as it defeats any notion that Defendants' advertising is false. *See Greifenstein v. Estee Lauder Corp.*, No. 12-cv-09235, 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013) ("mere existence" of a study providing clinical substantiation, even if plaintiff has "dissatisfaction" over "testing methods," defeats the argument that a product lacks substantiation); *see also Phillips*, 19 N.E.3d at 102 ("unsupported, conclusory allegations regarding the falsity of certain information is "insufficient to assert any deceptive act or practice" under ICFA).

***Second,*** Plaintiff incorrectly alleges that Neuriva lacks substantiation for its brain-health claims. Here, Plaintiff challenges the Doma study *alone* as improperly substantiating Neuriva's brain-health claims. *E.g.* FAC ¶¶ 15–20. In *Gredell v. Eyth Laboratories, Inc.*, which addressed similar allegations, a plaintiff challenged marketing of a prescription drug product under ICFA, among other statutes, as insufficiently substantiated. 367 Ill. App. 3d 287, 291 (2006). The court reasoned that "[l]ack of substantiation is deceptive only when the claim at issue implies there is no substantiation for that claim." *Id.* The court went on to say that "[m]erely because a fact is unsupported by clinical tests does not make it untrue." *Id*. Plaintiff does not offer her own scientific study of Neuriva products to demonstrate that the products do not in fact perform the five brain-related health claims represented on its labels. Instead, she offers a critique of *one* study by *one* scientist displeased by the methodology employed by the Reckitt authors. This professional difference of opinion does not demonstrate that "there is [lack of] substantiation for that claim"

nor that Neuriva is "unsupported by clinical tests." *Id.; see also Baldwin v. Star Sci., Inc.,* 78 F. Supp. 3d 724, 738 (N.D. Ill. 2015) ("The problem for Plaintiff is that, even assuming the drug was not 'effective,' the complaint fails to produce a single allegation that attributes to a particular Defendant" any statement that taking the drug could cure a disease.).

What's more, in approving Reckitt's class action settlement in an essentially identical proceeding, a court in the Southern District of Florida concluded that replacing "clinically proven" with "clinically tested" would support Neuriva's brain health claims. *See Williams*, No. 1:20-cv-23564, ECF 133 (accepting Reckitt's election to change its brain health claims from "clinically proven" to "clinically tested"), 140. The court approved a settlement centered on that change after considering evidence demonstrating the significance and value of that change. Although that approval was later vacated on unrelated grounds, the settlement proceedings underscore that Plaintiff's claims lack merit.

Moreover, contrary to what the FAC and Bazinet Report suggest, the Doma Study is not the sole basis for Defendants' brain-health representations. Plaintiff completely neglects that Defendants' substantiation framework also includes independent, ingredient-level studies demonstrating the cognitive benefits of PS and CCE individually. The Doma study itself cites, among other studies, the following:

***<u>Phosphatidylserine (PS) Ingredient-Level Substantiation Cited in the Doma Report</u>***

- Lee et al., *Prog Neuropsychopharmacol Biol Psychiatry* (2010). Krill phosphatidylserine improved learning and memory in aged rats.
- Richter et al., *Clin Interv Aging* (2013). 12 weeks of 300 mg/day soybean-derived PS improved cognitive performance in elderly subjects with subjective memory complaints.
- Yong et al., *Chongqing Med* (2011). Research on human memory enhancement by phosphatidylserine-fortified milk.
- Kato-Kataoka et al., *J Clin Biochem Nutr* (2010). 100 mg/day soybean-derived PS improved memory function in elderly Japanese subjects with memory complaints.

*See* FAC Ex. C. n.28-31.

***<u>Whole Coffee Cherry Extract (CCE) Ingredient-Level Substantiation Cited in the Doma Report</u>***

- Reed et al., *J Cognit Enhanc* (2018). A WCCE-containing beverage improved cognition related to alertness and attenuated fatigue after an acute dose in healthy adults.

- Robinson et al., *Aging Neuropsychol Cogn* (2020). Post hoc analysis revealed significant reductions in reaction time after 7 and 28 days of WCCE supplementation in older adults with mild cognitive impairment.
- Robinson et al., *Antioxidants* (2021). Reaction time significantly improved from baseline after acute WCCE supplementation in adults with memory complaints; also showed increased BDNF from baseline.
- Cotter et al., *Nutr Neurosci* (2022). Review summarizing findings of studies related to WCCE and BDNF.
- Reyes-Izquierdo et al., *Br J Nutr* (2013). Randomized, placebo-controlled trial showing WCCE increased plasma BDNF levels compared to placebo.

*See* FAC Ex. C. n.21-25; *see also* Small Decl.

In short, the Doma study did not arise in, and did not draw its conclusions from, a scientific vacuum. The FAC, and the exhibits attached thereto, do not address or critique even close to the entire independent body of evidence supporting either the Doma Study's findings or Neuriva's clinical substantiation. Because Plaintiff fails to meet her burden to demonstrate that Neuriva lacks scientific substantiation, her ICFA claim must be dismissed.

### C. Plaintiff lacks standing to assert claims for products she did not purchase.

Plaintiff purchased only one product: Neuriva Plus. FAC ¶ 85. Yet the FAC asserts claims on behalf of purchasers of the entire Neuriva product line, including Neuriva Original, Neuriva Original Gummies, Neuriva Plus Gummies, and Neuriva Ultra. *Id.* ¶ 1. Plaintiff lacks Article III standing to assert claims for these unpurchased products.

Article III of the Constitution limits federal judicial power to actual "Cases" and "Controversies." To establish standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff who has not purchased or used a product cannot establish injury in fact with respect to that product has not been exposed to its allegedly deceptive labeling, has not paid a premium price based on any misrepresentation, and has not experienced the product's alleged failure to deliver promised benefits. *See Willard v. Tropicana Mfg. Co.,* 577 F. Supp. 3d 814, 824 (N.D. Ill. 2021) (noting that "the majority of the

courts in the Northern District of Illinois [] that have addressed this issue have determined that class-action plaintiffs are prohibited from overcoming the requirements of Article III standing simply by arguing that non-purchased products are substantially similar to purchased products") (collecting cases).

Courts in this Circuit and elsewhere have held that a plaintiff lacks standing to challenge products she did not purchase, particularly where the unpurchased products differ materially in formulation or composition. *See id.; Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348 (S.D. Fla. 2012) (limiting plaintiff's standing to the specific product purchased); *Toback v. GNC Holdings, Inc.*, No. 13-80526, 2013 WL 5206103 (S.D. Fla. Sept. 13, 2013) (same); *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366 (S.D. Fla. 2015) (same).

**D. ICFA does not apply extraterritorially to the proposed multi-state class**

ICFA has no extraterritorial application. Plaintiff's proposed multi-state class—encompassing purchasers in 10 states—seeks to extend ICFA to transactions that occurred entirely outside Illinois. Under controlling Illinois Supreme Court and Seventh Circuit authority, these claims must be dismissed or stricken. FAC ¶ 97.

The Illinois Supreme Court established the controlling framework for ICFA extraterritoriality in *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005). There, the court held that ICFA does not "apply to fraudulent transactions which take place outside Illinois." *Id.* at 185. However, the court recognized that a non-resident plaintiff may pursue a private cause of action under ICFA "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Id*. at 187. The *Avery* court considered factors including the plaintiff's residence; the defendant's principal place of business; where the transaction occurred; where the alleged deception occurred; and whether the plaintiff had any direct contact with Illinois-based representatives of the defendant.

This framework was affirmed in *Daly v. Glanbia Performance Nutrition, Inc.*, No. 23 C 933, 2023 WL 5647232, at * 2–3 (N.D. Ill. 2023). There, like here, plaintiffs brought an ICFA claim on behalf of a nationwide class. *Id.* at *1. The court reiterated that "ICFA does not apply

extraterritorially" and "does not provide class members that purchased the [product] outside of Illinois with a cause of action." *Id.* at *3. The court struck the nationwide class allegations for an ICFA claim. *Id; see also Kubilius v. Barilla Am., Inc.*, No. 18 C 6656, 2019 WL 2861886, at *1 (N.D. Ill. July 2, 2019) (dismissing plaintiff's claims behalf of a nationwide class under Rule 12(b)(6) finding "plaintiff's claim under ICFA ... has no extra-territorial application"); *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at *2 (N.D. Ill. Oct. 9, 2019) (dismissing plaintiff's claims brought on behalf of nonresident plaintiffs under Rule 12(b)(6) and finding "Illinois statutes usually have limited territorial reach. The ICFA is no exception, and it does not apply to fraudulent transactions which take place outside Illinois." (cleaned up)).

None of the putative class members here is alleged to reside in Illinois, have purchased any Neuriva product in Illinois, have viewed or relied upon any Neuriva marketing material while in Illinois, have had any contact with Reckitt in Illinois, or have had any transaction-related connection to Illinois whatsoever. The multi-state class should therefore be dismissed. Plaintiff's own pleading of an alternative, Illinois-only class tacitly recognizes that ICFA cannot reach the out-of-state transactions Plaintiff seeks to aggregate.

## V. Conclusion

For the foregoing reasons, Reckitt respectfully requests that the Court enter an order dismissing the FAC in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: August 24, 2026

By: __*/s/ Kathleen A. Stetsko*_____________

**ASHURST PERKINS COIE US LLP**

Kathleen A. Stetsko, Bar No. 6297704
Spencer Gottlieb, Bar No. 6340380
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606
(312) 324-8400
kate.stetsko@ashurstperkins.com
spencer.gottlieb@ashurstperkins.com

David T. Biderman, *Pro Hac Vice*
Carrie Akinaka, *Pro Hac Vice*
Micaela Snashall, Bar No. 6339703
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
(310) 788-9900
david.biderman@ashurstperkins.com
carrie.akinaka@ashurstperkins.com
micaela.snashall@ashurstperkins.com

*Attorneys for Defendants*
*Reckitt Benckiser LLC and RB Health (US) LLC*